**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **IGNACIO HERNANDEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-10-CV-480-KC** |
| | § | |
| **JANET NAPOLITANO, Secretary of** | § | |
| **the Department of Homeland Security,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

On this day, the Court considered Defendant Janet Napolitano, Secretary of the

Department of Homeland Security's, Motion for Summary Judgment ("Motion"), ECF No. 20,

and Defendant's Motion to Strike Plaintiff's Declaration ("Motion to Strike"), ECF No. 25.

After due consideration, the Court hereby **GRANTS** the Motion and **DENIES** as moot

the Motion to Strike.

**I.     BACKGROUND**

Defendant moves to strike Plaintiff's declaration because the declaration contradicts his

prior sworn testimony.  Mot. to Strike 1.  As the ruling on the Motion to Strike determines in part

the facts relevant to this case, the Court considers this Motion first.  However, even relying on

Plaintiff's evidence that Defendant seeks to strike, the Court still grants summary judgment for

the reasons explained below.  Accordingly, the Court need not consider Defendant's Motion to

Strike and denies it as moot.

The facts presented here are taken from either Plaintiff's allegations, Plaintiff's evidence,

or the undisputed facts.  Plaintiff is an employee of the Department of Homeland Security ("DHS").  Compl. ¶ 7, ECF No. 1; Pl.'s Resp. 1, ECF No. 23.  Plaintiff works at the Bridge of Americas in El Paso, Texas, as a United States Customs and Border Protection Officer ("CBP Officer").  Pl.'s Resp. to Def.'s Undisputed Facts ("Plaintiff's Facts") ¶ 2, ECF No. 23-2.

Beginning in 2004, Plaintiff served as the local union president for the American Federation of Government Employees — Local 1210 ("AFGE").  *Id.* ¶ 4.  AFGE is a sub-part of a larger union known as National Immigration and Naturalization Service Council (NINSC).  Mot. App. A - Statement of Facts ("Def.'s Facts") ¶ 10 n.1, ECF No. 20-1.  AFGE represented legacy Immigration and Naturalization Service ("INS") employees.  Pl.'s Facts ¶ 5.   The employees were known as "legacy" INS employees because the employees used to work for INS. *See* Compl. 13.  Then, in 2002, Congress created DHS and integrated the INS employees into the new DHS agency.  *See* Compl. 13.

Because Plaintiff was president of AFGE, DHS provided Plaintiff with "union block time" to work on union activities.  Pl.'s Facts ¶ 4.  Plaintiff spent 45% of his time at work on union activities, and 55% of his time fulfilling the regular duties of a CBP Officer.  *See id.* ¶¶ 4, 13.

As president of AFGE, Plaintiff was frequently involved in disputes between union members and DHS.  Decl. of Ignacio Hernandez ("Plaintiff's Declaration") ¶ 8, ECF No. 23-3. Specifically relevant to this case, Plaintiff filed several Equal Employment Opportunity ("EEO") complaints regarding the Foreign Language Awards Program (collectively the "FLAP Complaints") in November of 2005.  Mot. Ex. 2 ("Plaintiff's Deposition") 43:16-45:18, ECF No. 20-3.  In the FLAP Complaints, Plaintiff alleged that DHS was not adequately compensating the

AFGE  union members for their foreign language skills.  *See id.* at 44:6-11; *see generally* Pl.'s

Resp. Ex. 14, ECF No. 23-15.

In late 2005 or early 2006, the government investigated Plaintiff and the FLAP

Complaints.  *See* Pl.'s Dep. at 45:19-25.  The investigators ultimately concluded that Plaintiff

fraudulently filed the FLAP Complaints.  *See id.* at 60:24-61:9.  As a result of the investigation,

DHS fired Plaintiff in September of 2007.  *See id.*  Plaintiff then filed a grievance contesting his

firing.  *See id.*  Ultimately, an arbitrator fully reinstated Plaintiff, finding that the firing was not

justified.  *See id.*

In May of 2007, DHS employees elected the National Treasury Employees Union

("NTEU") to represent almost all of DHS's employees, including the employees previously

represented by AFGE.  *See* Compl. ¶ 14; Pl.'s Dep. 26:4-8.  On May 18, 2007, the Federal Labor

Relations Authority certified NTEU as the exclusive representative of almost all of DHS's

employees.  *See* Compl. ¶ 14.

This shift to one union was a significant change for DHS because before the election and

certification, different unions represented different groups of DHS employees based on their

previous employers.  *See* Pl.'s Facts ¶¶ 6-9.  For example, NTEU had only represented legacy

employees of the United States Customs Service before the election.  *See* Pl.'s Facts ¶ 6.

Following the certification of NTEU as the exclusive representative of DHS's employees,

DHS issued a memo entitled "CBP Bargaining Unit Certification and Post-Certification

Questions and Answers" ("Guidance Letter") that addressed questions about the change in union

structure and leadership.  Compl. ¶ 14; Mot. Ex. 3, Guidance Letter 1, ECF No. 20-4.  At the

very top of the Guidance Letter, it stated: "[t]he following questions and answers were developed

to provide specific guidance on issues managers, supervisors and other CBP representatives may encounter following the . . . certification of [NTEU] as the exclusive representative of CBP's new bargaining unit." Guidance Letter 107. Below are three questions and answers from the Guidance Letter that are particularly relevant to this case:

(3) With the issuance of a new certification for the non-Border Patrol Sector unit, what is the status of the former legacy component unions?

As a result of the issuance of a certification for the new bargaining unit represented by NTEU, the certifications afforded the former legacy component unions are no longer recognized. This result applies to all of the former units and unions, including the National Association of Agriculture Employees (NME) and the National Association of Plant Protection and Quarantine Office Support Employees (NAPPQOSE), who represented a unit of former employees of the U.S. Department of Agriculture Plant Protection and Quarantine; the National Immigration and Naturalization Service Council (NINSC) [and thus its sub-union AFGE], who represented a unit of employees of the former U.S. Immigration and Naturalization Service; and the National Treasury Employees Union (NTEU) who represented two units of employees of the former U.S. Customs Service.

(4) What is the impact of the issuance of the new certification on the national collective bargaining agreements?

The technical answer to this question is complex and can be confusing. Stated as simply as possible, since the collective bargaining agreements were negotiated between organizations and unions representing bargaining units that no longer exist, they do not carry the full weight of an agreement negotiated with CBP. As a result, CBP's obligation to continue to apply the contents of these agreements vary dependent upon their content.

Generally, the applicability of specific contract provisions fall into two categories. They are:

(a) Employee Conditions of Employment: These include personnel policies, procedures and practices. Until a collective bargaining agreement for the new unit is negotiated and implemented, CBP is obligated to maintain the status quo, to the extent consistent with operational requirements. For many managers and supervisors, particularly within the Office of Field Operations, this means continuing to adhere to multiple policies and procedures for

4

employees, based upon their former organizational affiliation.

(b) <u>Union Institutional Benefits</u>: Examples include agency-provided office space, official time and union dues. Upon certification of the new unit and its representative, CBP is obligated to terminate all contractual benefits provided to all of the former unions. However, to avoid unnecessary disruption and in the interest of ensuring a smooth transition to the new unit and representational structure, CBP made several specific determinations that are described in the answers to the questions below.

Because of the complexity and sensitivity of many of these issues, it is important that managers and supervisors closely follow the specific guidance contained in this document, and direct questions regarding the applicability of specific agreements or provisions thereof to their servicing LER Specialist.
. . . .
(14) Since NINSC [and thus AFGE] and NAAE are no longer entitled to official time, what happens to CBP employees from those units who were performing representational functions on 100% or other block official time?

At the national level, CBP notified NINSC and NAAE that these employees are expected to contact their official supervisors of record to make arrangements to return to work. Absent contact from the employee, supervisors should be prepared to contact these employees to discuss their return to work. Recognizing that some of these employees, particularly those who have not performed any agency work for some time, may need training or other certification processes to fulfill job requirements.

*Id.* at 107-108, 112.

The Guidance Letter additionally states that NTEU is now the exclusive representative of

employees within the new bargaining unit. *Id.* at 109. Finally, the Guidance Letter explains that

the change in union structure will cause some problems with pending grievances because the

union at the time of the grievance is the proper representative of the employee. *See id.* at 110.

Therefore, the Guidance Letter instructs DHS supervisors to be "reasonable in exercising their

authority to excuse employees from duty without charge to leave to attend grievance meetings

and arbitration hearings — particularly in grievances concerning discipline — provided there is

no impact on CBP operations." *Id.* at 111.

On May 29, 2007, a few days after the issuance of the Guidance Letter, Plaintiff's supervisor, Patricia Aveitia, informed him orally that his block time had been terminated.[1]  *See* Compl. ¶¶ 14, 18.  Plaintiff memorialized this conversation in a email.  Resp. Pl.'s ex. 1, at 1, ECF No. 23-12.

After returning to full time work on the Bridge as a CBP Officer, Plaintiff made multiple requests for official leave time.  During the months of May, June, and July, Plaintiff made at least eleven requests for official leave.  *See* Pl.'s Facts 14, 16, 18-29.  According to Plaintiff, DHS denied two of those requests — the requests on May 31, 2007, and June 4, 2007.  Pl.'s Decl. ¶¶ 48-52.

Plaintiff brings this lawsuit alleging that DHS denied Plaintiff union block time and denied two leave requests because Plaintiff is Hispanic and male in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq*. ("Title VII").  Additionally, Plaintiff claims DHS denied Plaintiff union block time and denied two leave requests in retaliation for Plaintiff filing the FLAP Complaints.  Compl. ¶¶ 19-21, 31; Pl.'s Dep. 43:16-20.

Defendant moves for summary judgment on all of Plaintiff's claims.  Mot. 1.

---

[1]   In his response, Plaintiff suggests indirectly that his supervisor, Patricia Aveitia, was biased against him because she was one of the investigators of the FLAP Complaints.  Resp. 11-12.  Unfortunately, Plaintiff never explains how this evidence is relevant.

## II.     DISCUSSION

### A.     Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  The court resolves factual controversies in

7

favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence.  *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

Plaintiff asserted claims for race discrimination, sex discrimination, and retaliation. Compl. ¶¶ 25-32.  The Court addresses each in turn.

## B.      Race and Sex Discrimination

Plaintiff alleges DHS discriminated against him based on race and sex in violation of Title VII.  Compl. ¶¶ 25-29.  Specifically, Plaintiff contends that DHS denied him union block time and two leave requests because he is Hispanic and male.  *See* Compl. ¶¶ 19-21.  In her Motion, Defendant argues that Plaintiff's race and sex discrimination claims cannot survive summary judgment.  Mot. 1.

The Court will analyze race and sex discrimination together for three reasons.  First, race and sex discrimination both arise under Title VII and have the same elements.  *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-58 (5th Cir. 2007).  Second, Plaintiff alleges the same discriminatory conduct — namely, that DHS denied him union block time and leave because he is Hispanic and male.  *See* Compl. ¶¶ 19-21.  Third, Plaintiff and Defendant both argue the sex

and race discrimination claims as one issue.  *See* Mot. 3; Resp. 2.

Title VII forbids an employer from discriminating against an employee because of the "individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  A plaintiff can prove intentional discrimination with direct or circumstantial evidence.  *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).  If a plaintiff offers circumstantial evidence, the Fifth Circuit applies a modified *McDonnell Douglas* approach.  *Id.*; *McCoy*, 492 F.3d at 556.

In this case, Plaintiff offers circumstantial evidence of discrimination, so the Court proceeds with the modified *McDonnell Douglas* approach.  The modified *McDonnell Douglas* approach has three steps.  *Jackson*, 619 F.3d at 466.  First, the plaintiff must establish a prima facie case of discrimination.  *Id.*  Second, if the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the employment action at issue.  *Id.*  Third, assuming the defendant meets this burden, the plaintiff must show that the defendant's legitimate, non-discriminatory reasons were pretext for discrimination.  *Id.*

Defendant first argues that Plaintiff has failed to establish a prima facie case.  Mot. 3-7. Second, Defendant argues that Plaintiff cannot show that the Defendant's legitimate, non-discriminatory reasons were pretext for discrimination.  Mot. 11-12.  The Court examines each argument in turn.

### 1.    Prima facie case

Defendant argues that Plaintiff is unable to make a prima facie showing that he suffered discrimination.  Mot. 3.  To establish a prima facie case of race or sex discrimination under Title VII, Plaintiff must show (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) that other similarly situated

employees were treated more favorably.  *McCoy*, 492 F.3d at 556; *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).  Defendant argues that Plaintiff fails to provide evidence of the last two elements.  Mot. 5-7.  The Court examines each.

### a.       Adverse employment action

Plaintiff argues that DHS's denial of union block time and DHS's denial of leave both qualify as adverse employment actions.  Resp. 4.  Defendant argues that neither of these qualify as adverse employment actions.  Mot. 5-6.  The Court agrees with Defendant.

The Fifth Circuit has a "strict interpretation of the adverse employment element" in discrimination cases.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).[2]  The employment action must consist of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating."  *Id.* (internal quotations omitted).  If the action "does not affect job duties, compensation, or benefits," it is not an adverse employment action.  *Id.* (internal quotations omitted).

A change in position or job duties can constitute an adverse employment action.  *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 613-15 (5th Cir. 2007); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996).  However, the change must be such that the new position or responsibilities are objectively worse, "such as being less prestigious or less interesting or providing less room for advancement."  *See Alvarado*, 492 F.3d at 613 (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999)); *see also Williams v. U.S. Dep't of Navy*, 149 F.

---

[2]       The Supreme Court of the United States altered the Fifth Circuit's "adverse employment action" standard in retaliation claims.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60, 66-67  (2006).  However, the standard remains the same for discrimination claims.  *See McCoy*, 492 F.3d at 559-60.

App'x 264, 269-70 (5th Cir. 2005) (20% change in job duties was not an adverse employment

decision).   A plaintiff's subjective perception is not enough.  *Alvarado*, 492 F.3d at 614 (quoting

*Forsyth*, 91 F.3d at 774).

DHS's denial of union block time does not qualify as an adverse employment action

because the change did not make Plaintiff's job or duties objectively worse.  Plaintiff appears to

rely on the undisputed fact that his duties changed to establish an adverse employment action.

*See* Resp. 4.  Before the union election, Plaintiff spent 45% of his time working on union

activities, and 55% of his time working as a CBP Officer.  Pl.'s Facts ¶¶ 4, 11.  After AFGE lost

the election, Plaintiff worked full time as a CBP Officer.  *See id.* ¶¶ 4, 9, 11, 13.

However, a mere change in duties or assignments, without the new duties being

objectively worse, is not enough to establish an adverse employment action.  *See Williams*, 149

F. App'x at 269-70; *Watts v. Kroger Co.*, 170 F.3d 505, 511-12 (5th Cir. 1999) (finding that a

change in the employee's work schedule and a request that the employee perform new job tasks

were not adverse employment decisions).  More importantly, Plaintiff's position did not change

— DHS hired Plaintiff to be a CBP Officer and throughout the relevant time period Plaintiff has

been a CBP Officer.  *See* Compl. ¶ 12.  Thus, Plaintiff's current position is not "less prestigious,"

nor does it "provid[e] less room for advancement" because his position as a CBP Officer has

remained the same.  *See Alvarado*, 492 F.3d at 613.

Perhaps Plaintiff subjectively finds his duties as a CBP Officer less interesting than his

duties as a union representative.  But there is no evidence that being a CBP Officer is objectively

less interesting.  Moreover, DHS never hired or employed Plaintiff as union representative.  DHS

has always employed Plaintiff as a CBP Officer.  In sum, the denial of union block time does not

qualify as an adverse employment action.

DHS's denial of two leave requests also does not qualify as an adverse employment action. Plaintiff is correct that denying an employee leave can constitute an adverse employment action. *See Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 521-22 (5th Cir. 2001). For example, the Fifth Circuit held that denying a professor a six-month leave qualified as an adverse employment action. *See id.* But denying just two individual requests for leave, and not the right in general to take leave, does not rise to the level of an adverse employment decision. *See Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) ("A single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general"); *Box v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006) ("denial of annual leave on January 2, 1998 . . . fall[s] short of showing an adverse employment action"); *Beltran v. Univ. of Tex. Health Sci. Ctr. at Hous.*, No. H-10-1949, 2011 WL 5977807, at *7 (S.D. Tex. Nov. 29, 2011) ("[C]ourts . . . have routinely found that the denial of short term vacation time is not an adverse employment action.").

In conclusion, neither the denial of union block time nor the denial of the leave requests constitutes adverse employment actions. Therefore, the Court holds that Plaintiff cannot establish a prima facie case of discrimination.

### b.    Similarly situated employees

In addition to failing to show an adverse employment action, Defendant argues Plaintiff has failed to produce evidence that DHS treated other similarly situated employees differently. Mot. 6. Plaintiff responds with evidence of three employees who DHS treated differently. Resp. 5. However, Plaintiff cannot survive summary judgment because none of the three employees

are similarly situated.

The Fifth Circuit requires that a plaintiff demonstrate that the employer treated a similarly situated employee differently under nearly identical circumstances. *Wheeler v. BL Dev. Cor.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)).

Plaintiff offers as evidence that DHS treated Liliana Salazar, Brad Gaetze, and Kevin Odenborg differently. Pl.'s Decl. ¶ 24. Plaintiff has uncontradicted evidence that all three of them have been on 100% union block time. *Id.*; Reply 5 n.8, ECF No. 8.[3] But all three are union officials from NTEU — the union that won the election. Pl.'s Facts ¶ 39. Thus, Salazar, Gaetze, and Odenborg are not similarly situated. And Plaintiff cannot point to any officials from the unions that lost the election whom DHS has treated differently. *See id.* ¶ 40; Pl.'s Dep. 20:23-21:1. Therefore, Plaintiff has no evidence that DHS treated similarly situated employees differently, and thus the Court holds that Plaintiff cannot establish a prima facie case of discrimination.

### 2.    Non-discriminatory reasons and pretext

Defendant argues that even if Plaintiff were able to establish a prima facie case, Defendant has a legitimate, non-discriminatory reason for denying both the union block time and the two leaves of absences. Mot. 11-12. In regard to the former, Defendant explains that DHS removed Plaintiff's union block time in accordance with the Guidance Letter's CBP-wide policy. Mot. 11. In regard to the latter, Defendant explains that DHS denied leave "in accordance with

---

[3]     To assist the reader in finding citations, the Court references the page numbers that the CM/ECF docketing system generated.

CBP's need for personnel coverage."  Mot. 11-12.

Plaintiff does not dispute that these explanations would qualify as legitimate reasons.
*See* Resp. 20.  Rather, Plaintiff claims these explanations were pretext for discrimination.  *See*
Resp. 20.  A plaintiff "may establish pretext either through evidence of disparate treatment or by
showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v.
Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d
212, 220 (5th Cir. 2001)).  Disparate treatment occurs where an employer treats one employee
differently than "other 'similarly situated' employees."  *Vaughn v. Woodforest Bank*, 665 F.3d
632, 637 (5th Cir. 2011).   A proffered explanation is unworthy of credence when the plaintiff
can reveal "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action."  *Garrett v. Hewlett-Packard Co.*, 305
F.3d 1210, 1217 (10th Cir. 2002); *see also Laxton*, 333 F.3d at 580-83 (noting inconsistencies in
the employer's policies and finding that the plaintiff had presented sufficient evidence to
establish pretext and defeat a motion for judgment as a matter of law).

Because Defendant offers separate reasons for denying the union block time and the
leaves of absence, the Court examines them separately.

### a.        Policy regarding union block time

Plaintiff offers two arguments to suggest that DHS's reliance on the Guidance Letter was
pretext for discrimination.  *See* Resp. 20-21.  However, there is no evidence to support either of
Plaintiff's arguments.

Plaintiff first argues that the Guidance Letter was not an agency-wide policy, but just
some loose guidance.  Resp. 20.  Thus, according to Plaintiff, any reliance by DHS on the

Guidance Letter was "fallacious."  Resp. 20.

However, Plaintiff has no evidence that the Guidance Letter was not an authoritative

policy, and the document itself shows it was.  At the very top of the Guidance Letter it states

"[t]he following questions and answers were developed to *provide specific guidance*."  Guidance

Letter 107 (emphasis added).  Even more telling is the response to the question: what is the

impact of the issuance of the new certification?"  *Id.* at 108-09.  The answer states: "[b]ecause of

the complexity and sensitivity of many of these issues, it is important that managers and

supervisors *closely follow the specific guidance* contained in this document.  *Id.* at 109 (emphasis

added).  Thus, the evidence shows that the Guidance Letter was an authoritative policy, and

Plaintiff has no evidence to rebut that.

Second, Plaintiff attempts to create a factual dispute by arguing that DHS misinterpreted

the Guidance Letter.  Resp. 20.  Plaintiff points to the following question and answer in the

Guidance Letter:

> 3)  With the issuance of a new certification for the non-Border Patrol Sector unit,
> what is the status of the former legacy component unions?
>
> As a result of the issuance of a certification for the new bargaining unit
> represented by NTEU, the certifications afforded the former legacy component
> unions are no longer recognized.  This result applies to all of the former units and
> unions, including the National Association of Agriculture Employees (NME) and
> the National Association of Plant Protection and Quarantine Office Support
> Employees (NAPPQOSE), who represented a unit of former employees of the
> U.S. Department of Agriculture Plant Protection and Quarantine; the National
> Immigration and Naturalization Service Council (NINSC) [and thus AFGE], who
> represented a unit of employees of the former U.S. Immigration and
> Naturalization Service; and the National Treasury Employees Union (NTEU) who
> represented two units of employees of the former U.S. Customs Service.

*See* Resp. 20-21; Guidance Letter 108.

Plaintiff argues that this language means that no union officials were allowed to have union block

time.  *See* Resp. 21.  Therefore, Plaintiff implies that Defendant's alleged reliance on the Guidance Letter is pretext for discrimination because DHS allowed the NTEU union officials to take union block time, but not Plaintiff.  *See* Resp. 21.

Despite Plaintiff's efforts, the Guidance Letter does not support Plaintiff's interpretation. The question and answer Plaintiff cited above only concerns NTEU's status as a legacy union, not about NTEU's status as the current union.  This is clear from the question itself: "what is the status of the former *legacy component unions*?"  Guidance Letter 108 (emphasis added).  The question did not ask about the current union.  The answer to the question further supports this interpretation because DHS wrote the answer in the past tense — "[NTEU] who *represented* two units."  *Id.* (emphasis added).  Thus, a plain reading of this question and answer suggests that NTEU as a legacy union representing employees of the former Customs Service is no longer recognized.  Nowhere in the Guidance Letter does it say that NTEU as the current union for DHS's employees is not recognized.  Rather, the Guidance Letter states the opposite — "NTEU *is* now the exclusive representative of [the] employees."  *Id.* at 109 (emphasis added).  Thus, the Court finds that Plaintiff's argument of pretext based on the Guidance Letter is insufficient to raise a genuine issue of fact.

### b.    Need for personnel coverage

Defendant offers a different explanation for denying Plaintiff's two leave requests. Defendant explains that DHS denied the leave requests "in accordance with CBP's need for personnel coverage."  Mot. 11-12.  Plaintiff argues that the stated reason was pretext for discrimination.  Resp. 21-22.  Specifically, Plaintiff argues that if DHS "really needed personnel coverage, [DHS] would have discontinued to provide official block time to the president of

NTEU, Brad Gaetzke, and the Special Assistant for the NTEU, Kevin Odenborg" who are both

white.  Resp. 15, 21.   Defendant argues this evidence does not show pretext.  Reply 5 n.8.  The

Court agrees with Defendant.

As stated above, Plaintiff "may establish pretext either through evidence of disparate

treatment or by showing that the employer's proffered explanation is false or 'unworthy of

credence.'" *See Laxton*, 333 F.3d at 578.  Plaintiff appears to attempt to offer both.

According to Plaintiff, DHS's explanation is unworthy of credence because it is

inconsistent — i.e. if DHS really needed more personnel coverage, no one would have been

given union block time.  *See* Resp. 21.  But Plaintiff provides no evidence that DHS needed

everyone for personnel coverage.  Rather, DHS stated it needed Plaintiff to work on those two

days.  There could be a myriad of valid reasons why DHS needed Plaintiff and not Gaetzke or

Odenborg.  The foremost among them being that Gaetzke and Odenborg were needed to work on

union issues, and Plaintiff was not needed for union work because his union lost the election.  Or

perhaps, Plaintiff had a specialized skill that neither Gaetzke or Odenborg had so that Plaintiff's

presence on the job was necessary.  In sum, it is not inconsistent for DHS to need one employee

for "personnel coverage" and not need others.

Plaintiff's statement also suggests disparate treatment because Gaetzke and Odenborg are

white and Plaintiff is Hispanic.  To show disparate treatment, Plaintiff must show that DHS

treated "similarly situated employees" differently.  *See Vaughn*, 665 F.3d at 637.  But here,

Gaetzke and Odenborg are not similarly situated.  As discussed above, both are union officials

from NTEU — the union that won the election.  Pl.'s Facts ¶ 39.  Therefore, Plaintiff fails to

provide evidence of pretext based on disparate treatment.

### c.   Conclusion

In conclusion, Plaintiff has failed to provide evidence that DHS's explanations were pretext for discrimination.  Therefore, the Court holds that Plaintiff's discrimination claims based upon race and sex cannot survive summary judgment even if Plaintiff presented a prima facie case.

### C.   Retaliation

Defendant argues that Plaintiff's retaliation claim also cannot survive summary judgment.  *See* Mot. 8-12.  In his Complaint and deposition, Plaintiff states that DHS retaliated against him for his EEO activity.  Compl. ¶ 31; Pl.'s Dep. 43:16-20.  Specifically, Plaintiff states that DHS took away his union block time and denied him leave twice because he filed the FLAP Complaints in November of 2005.  *See* Compl. ¶¶ 19, 21, 31; Pl.'s Dep. 43:16-20.

Title VII protects employees from retaliation by their employer for exercising their rights under Title VII.  *See* 42 U.S.C. § 2000e-3(a).  The statute states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

*Id.*

When a plaintiff offers circumstantial evidence of retaliation, as in this case, a modified version of the familiar *McDonnell Douglas* approach applies.  *See McCoy*, 492 F.3d at 556-57.  First, the plaintiff must establish a prima facie case of retaliation.  *Id.*  Second, if the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-retaliatory reason for the employment action at issue.  *Id.* at 557.  Third, assuming the defendant meets this burden,

the plaintiff must show that the defendant's legitimate, non-retaliatory reasons were pretext for the actual retaliatory reason.  *Id.*

Defendant argues that Plaintiff has failed to establish a prima facie case and Plaintiff cannot show that the Defendant's legitimate, non-discriminatory reasons were pretext for retaliation.  Mot. 8-12.  The Court examines each argument.

### 1.       Prima facie case

Defendant argues that Plaintiff is unable to make a prima facie showing that he suffered retaliation.  Mot. 8.  To establish a prima facie case of retaliation, a plaintiff must show (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.  *McCoy*, 492 F.3d at 556-57 (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).  Defendant argues that Plaintiff fails to establish the last two elements.  Mot. 8-10.  The Court examines each argument in turn.

### a.       Adverse employment action

Plaintiff argues that DHS's denial of union block time and DHS's denial of leave both qualify as adverse employment actions.  Resp. 11-14.  Defendant argues that neither of these qualify as adverse employment actions.  Mot. 8-9.  The Court agrees with Defendant.

In contrast to a Title VII discrimination claim, courts construe adverse employment actions more broadly in a retaliation claim.  *Burlington N.*, 548 U.S. at 60, 66-67.  The purpose of a retaliation claim requires a different standard.  *Id.* at 62-67.  Discrimination claims are designed to deter and punish acts of discrimination.  *Id.* at 63.  In contrast, the anti-retaliation

19

provision aims to ensure employees are not discouraged from "efforts to secure or advance enforcement of the Act's basic guarantees." *Id.*  Therefore, the law must prohibit a greater scope of adverse acts because otherwise employees will feel less free to seek protection of the law. *Id.* at 63-68.

Although the scope of protection is broader, the harm must be "materially adverse." *Id.* at 68.  That means "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. Materiality is key because "it is important to separate significant from trivial harms." *Id.* at 68.

In this case, Plaintiff has evidence that DHS denied him union block time and two days of leave.  Pl.'s Decl. ¶¶ 48-52.  However, neither of these qualify as an adverse employment action because neither is materially adverse.

A reasonable person would not be dissuaded from making a charge of discrimination when his employer denied him union block time after his union lost the election.  Although a change in job duties could dissuade a reasonable person, "[c]ontext matters." *Burlington N.*, 548 U.S. at 69 ("[T]he significance of any given act of retaliation will often depend upon the particular circumstances").  The context in this case is that Plaintiff formerly had significant union duties — 45% of his time, in fact, was allocated to those duties.  Pl.'s Facts ¶¶ 4, 11.  After his union lost the election, his union duties diminished significantly.  *See* Pl.'s Decl. ¶¶ 48-52. Thus, losing union block time after his union responsibilities diminished significantly would not dissuade a reasonable person from engaging in a protected activity.  *Cf. Aryain v. Wal-mart Stores Texas LP*, 534 F.3d 473, 486 (5th Cir. 2008) (examining what an employee "reasonably can expect" based on her position in the company).

Moreover, Plaintiff's position never changed.  As stated above, DHS hired Plaintiff to be a CBP Officer, and throughout the relevant time period Plaintiff has been a CBP Officer.  *See* Compl. ¶ 2; Pl.'s Decl. ¶ 3.  DHS has not changed Plaintiff's job title, grade, salary, or benefits, and there is no evidence that Plaintiff has suffered a diminution in prestige.  *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332-33 (5th Cir. 2009) (holding that a significantly increased workload due to a reassignment was not an adverse employment action because the reassignment did not affect "her job title, grade, hours, salary, or benefits . . . . and there is no evidence that she suffered a diminution in prestige or change in standing among her co-workers").  Plaintiff may prefer working on union activities, but Plaintiff's subjective preferences are not relevant.  *See Burlington N.*, 548 U.S. at 68.

DHS's denial of leave on two occasions also does not qualify as an adverse employment action.  Although a reasonable person might be dissuaded by a general denial of the ability to take leave, a reasonable person would not be dissuaded by two specific instances absent special circumstances.  *See Ogden*, 397 F. App'x at 939 ("A single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general."); *Lara v. Kempthorne*, 673 F. Supp. 2d 504, 518–19 (S.D. Tex. 2009) (holding that denial of vacation leave request was not an adverse employment action).  Moreover, context again matters.  *Burlington N.*, 548 U.S. at 69.  Here,  it is undisputed that DHS allowed Plaintiff to take leave on a least nine other occasions.  Pl.'s Facts ¶¶ 18-26, 28-29.  A reasonable person would not be dissuaded from filing an EEO complaint when an employer denies two requests for leave, and yet grants nine other requests.

In conclusion, the Court holds that the denial of union block time and the denial of the

two leave requests do not qualify as an adverse employment actions.

### b.   Causation

Defendant additionally argues that Plaintiff has no evidence to establish causation.  Mot. 9-10.  In response, Plaintiff appears to rely solely on temporal proximity to establish causation. *See* Resp. 11.  Defendant responds that too much time in this case has elapsed between the protected activity and the alleged retaliation to establish causation.  *See* Mot. 10.  The Court agrees with Defendant.

For a plaintiff to establish the prima facie element of causation in a Title VII retaliation claim, the plaintiff does not need to establish "but for" causation.  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002).  Given this lower standard, a plaintiff can establish causation relying solely on temporal proximity.  *See id.* (citing *Evans v. City of Hous.*, 246 F.3d 344, 352 (5th Cir. 2001)); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). However, the Supreme Court has noted that the "cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  *Clark Cnty. Sch. Dist. v. Breeden* 532 U.S. 268, 273 (2001). Although the Supreme Court did not define "very close," the Court cited cases holding three and four-month periods insufficient to infer a causal link.  *Id.* at 273-74 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three months); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four months)).  The Fifth Circuit has followed this guidance and found that a span of five months is too long to establish causation.  *See Raggs*, 278 F.3d at 471-72.

Plaintiff argues that "surely the period that elapsed here between the protected activity and an adverse action is sufficient."  Resp. 11.  But the time elapsed here is over a year.  In

22

Plaintiff's deposition he stated that he was retaliated against for filing the FLAP Complaints.

Pl.'s Dep. 43:16-20.  Plaintiff filed the FLAP Complaints in November of 2005.  *Id.* at 44:12-

45:11.  DHS denied Plaintiff the union block time and the leave requests in late May and early

June of 2007.  Compl. ¶¶ 18-19.  Thus, the time between the filing of the FLAP Complaints in

November of 2005 and denial of the block time and leave requests in May of 2007 was well over

a year.  That is too long of time span to provide evidence of causation without other evidence of

causation.  *See Raggs*, 278 F.3d at 471-72 (holding that five months is too long to establish

causation).  In sum, Plaintiff has no evidence of causation, and thus cannot establish a prima

facie case of retaliation.

### 2.      Non-discriminatory reasons and pretext

Defendant argues Plaintiff's retaliation claim also cannot survive summary judgment

because Plaintiff cannot show pretext.  Mot. 11-12.  The parties arguments on this issue are

identical to the ones discussed above in regard to Plaintiff's discrimination claims.  *See supra*

Part II.B.2; Mot. 11-12; Resp. 20-22.  For the same reasons discussed above, the Court agrees

with Defendant that Plaintiff cannot show pretext.

To summarize that analysis, Defendant states that DHS denied Plaintiff's union block

time in accordance with a CBP-wide policy, and denied the two leave requests "in accordance

with CBP's need for personnel coverage."  Mot. at 11-12.  Plaintiff attempts to show pretext by

arguing that the Guidance Letter was not authoritative and DHS misinterpreted the Guidance

Letter.  But Plaintiff has no evidence to support these arguments.  Likewise, Plaintiff attempts to

show pretext in the personnel coverage explanation by showing that DHS's explanation is

inconsistent, and by showing disparate treatment.  However, Plaintiff again has no evidence of

inconsistency or disparate treatment.  Accordingly, Plaintiff has no evidence of pretext, and thus Plaintiff's retaliation claim cannot survive summary judgment.

## IV.   CONCLUSION

In summary, Plaintiff's claims cannot survive a motion for summary judgment.  First, Plaintiff's discrimination claims based on race and sex fail because Plaintiff cannot make out a prima facie case or show pretext.  Second, Plaintiff's retaliation claim fails because Plaintiff cannot make out a prima facie case or show pretext.  Defendant is therefore entitled to judgment as a matter of law.  Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 20.  Given that the Court grants Defendant's Motion for Summary Judgment even while considering in part the evidence that Defendant sought to strike, the Court **DENIES** as moot Defendant's Motion to Strike, ECF No. 25.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close the case.

**SO ORDERED.**

**SIGNED** on this 27th day of February, 2012.

_Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE